UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| VELDER O. WILLIAMS,<br><br>Plaintiff,<br><br>vs.<br><br>CHAD WESTRUM, individual capacity; DALTON, individual capacity; BUTLER, individual capacity; MCCLURE, individual capacity; GROSS, individual capacity; HEALY, individual capacity; TREADWAY, individual capacity; SHERIFF NELSON, individual capacity; HARRIS, individual capacity; WINKEL, individual capacity; and DOES 1-50, individual capacity,<br><br>Defendants. | 4:21-CV-04163-KES<br><br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Velder O. Williams, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. This court screened Williams's complaint, dismissing it in part and directing service upon defendants in part. Docket 6. Specifically, Williams's Fourteenth Amendment equal protection claim against Sioux Falls Police Department Officer Chad Westrum in his individual capacity and his Fourth Amendment unreasonable search and seizure claim against Westrum and Sioux Falls Police Department Officer Joel Dalton in their individual capacities survived screening, and Williams's remaining claims were dismissed. *See id.* at 17. Defendants now move for summary judgment. Docket 20.

Williams moves for judgment, reconsideration of this court's screening order, and appointment of counsel. Dockets 27, 28, 31.

## I.  Factual Background

When considering a motion for summary judgment, the court recites the facts in the light most favorable to the non-moving party. Under Local Civil Rule 56.1.A, a party moving for summary judgment must present each material fact "in a separate numbered statement with an appropriate citation to the record in the case." A party opposing summary judgment "must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record." D.S.D. Civ. LR 56.1.B. "All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. Civ. LR 56.1.D. Here, Williams filed three motions since defendants filed their motion for summary judgment, but he did not respond to defendants' motion for summary judgment, and he has not filed a statement of material facts presenting each material fact in a separate numbered statement. *See* Dockets 27, 28, 31. All material facts in defendants' statement of material facts are deemed admitted, but this court will also recite Williams's version of the facts.

The facts under defendants' statement of material facts are: that on April 2, 2019, Detective Holbeck of the Sioux Falls Police Department was observing 405 ½ South Willow Avenue, an address whose occupants were suspected of

2

the distribution of controlled substances. *See* Docket 21 ¶ 2. He watched a GMC Envoy approach a nearby house at 409 South Willow Avenue, an address whose occupants were also suspected of being associated with drug activity. *Id.* ¶ 3. Law enforcement watched a man leave the GMC Envoy, enter the house at 409 South Willow, then return to the GMC Envoy and drive away. *Id.* ¶¶ 7, 9. The GMC Envoy was associated with Jeff Moore, who was known to the Sioux Falls Police Department for his history of drug activity. *Id.* ¶¶ 4-5. A 1999 silver Pontiac Bonneville then parked in front of 409 South Willow, and a Black man exited the vehicle and entered 409 South Willow. *Id.* ¶¶ 10-11. This man was later identified as Velder Williams. *Id.* ¶ 12. The GMC Envoy returned to 409 South Willow, and Williams met Moore outside. *Id.* ¶¶ 13-14. Moore removed a black backpack from his vehicle, and he and Williams entered the house at 409 South Willow. *Id.* ¶¶ 15-16. Then, Moore emerged from the house without the backpack and drove away. *Id.* ¶ 17. At this point, law enforcement was able to visually identify Moore. *Id.* ¶ 18.

Two more vehicles arrived at 409 South Willow, and their drivers, both men, entered the house. *Id.* ¶¶ 19-20. One of the men left with Williams in the Bonneville. *Id.* ¶¶ 21, 23-24. At that time, the man with Williams was carrying the backpack. *Id.* ¶ 22. Law enforcement followed Williams and the other man to another location on 8th Street. *Id.* ¶ 25. The other man left the Bonneville with the backpack, and Williams returned in the Bonneville to 409 South Willow, then drove away again. *Id.* ¶¶ 27-29. Law enforcement contacted Officer Westrum, provided a description of the Bonneville, informed Westrum that the

Bonneville had left a house associated with drug activity, and asked Westrum to find independent probable cause to stop Williams. *Id.* ¶¶ 30-32. Westrum followed Williams, and Williams failed to maintain his lane while making a right turn from South Western Avenue to 49th Street. *Id.* ¶¶ 33-34. Williams does not dispute that he committed this traffic violation. *Id.* ¶ 35 (citing Docket 1 at 1). A white Ford F-150 also committed the same traffic violation. *Id.* ¶ 36. Westrum decided to pull Williams over and not the Ford F-150 because the Ford F-150 was not suspected of drug activity. *Id.* ¶¶ 37-38.

Westrum positioned his vehicle behind the Bonneville and observed Williams "making furtive movements under the driver side seat." *Id.* ¶¶ 39-40 (citations omitted). Westrum activated his siren, and Williams did not immediately pull over; instead, he continued to reach under his seat. *Id.* ¶¶ 41-42. Fifteen seconds later, Westrum activated his siren a second time, and Williams "eventually pulled over approximately sixty seconds after the first siren." *Id.* ¶¶ 43-44. Westrum informed Williams of the reason for the stop and requested Williams's license, registration, and proof of insurance. *Id.* ¶¶ 46-47. Williams responded that he did not have a valid driver's license and provided his name and date of birth. *Id.* ¶¶ 48-49. Westrum discovered that Williams had an outstanding warrant for violation of his 24/7 sobriety program for possession of a controlled substance. *Id.* ¶ 53; Docket 24 ¶ 11. Dispatch called Dalton to the scene to provide backup. Docket 21 ¶ 54.

Westrum did not inform Williams of the warrant at this point, and Williams stated that he was driving to his girlfriend's house. *Id.* ¶¶ 55, 58.

When Westrum asked Williams where he had been, Williams claimed that he was returning home from the grocery store. *Id.* ¶ 59. Williams also claimed that he had no record, then admitted that he had three DUI convictions in Aberdeen. *Id.* ¶¶ 60-61. Williams again denied that he had any other interactions with law enforcement, except for arrests for minor things such as paying tickets or paying child support late. *Id.* ¶ 66.

Williams denied that there were any weapons or illegal substances in the car. *Id.* ¶ 70. Westrum asked about Williams's drug use, and Williams claimed that he did not use drugs other than marijuana in the 1990s. *Id.* ¶¶ 71-72. Williams denied that he was on a 24/7 sobriety program, and Westrum informed Williams of the warrant for his arrest. *Id.* ¶¶ 73, 76. Westrum asked Williams for consent to search the Bonneville, and Williams did not consent to a search. *Id.* ¶ 77. Westrum and Dalton, who had arrived on the scene, then arrested Williams. *See id.* ¶¶ 78-79. Westrum explained to Williams his basis for probable cause to search the vehicle, describing Williams's movements before being pulled over and the warrant. *Id.* ¶ 80. Westrum also relied on the information he received from the law enforcement officers who were observing 409 South Willow. *Id.* ¶ 81. Dalton searched underneath the driver's seat and found a glass pipe with burnt residue and copper wool. *Id.* ¶¶ 82-83. After finding a pipe that they believed was used for illegal drugs, Westrum and Dalton searched the rest of the Bonneville. *Id.* ¶¶ 84-85. The burnt residue in the pipe was later determined to be cocaine. *Id.* ¶ 86.

5

In his complaint, Williams claims that Westrum pulled him over because he is Black. Docket 1 at 1. He claims that Westrum did not pull over two other vehicles, including a truck driven by a White man. *Id.* Williams attaches previous court filings to his complaint in which he alleged that his car was searched without his consent and without an applicable exception to the Fourth Amendment. Docket 1-1 at 6, 9. In these filings, he alleged that Westrum stated in the police report, "[g]iven his movements prior to the stop, Officer Dalton checked under the driver's seat to ensure a weapon was not stashed." *Id.* at 6.

## II.   Motion for Reconsideration

Williams filed a motion in which he seeks to reopen the claims in his complaint that were dismissed without prejudice on screening. Docket 28. This court construes Williams's motion as a motion for reconsideration. *See id.* The Eighth Circuit Court of Appeals has traditionally instructed courts to consider motions for reconsideration either under Rule 59(e) or Rule 60(b). *See Sanders v. Clemco Indus.*, 862 F.2d 161, 168 (8th Cir. 1988). Rule 60(b) authorizes a court to relieve a party from a final judgment under the following circumstances:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

6

Fed. R. Civ. P. 60(b).

Other than stating his desire to reopen the screened and dismissed claims, Williams provides no justification for reconsideration. *See* Docket 28. Thus, the only potentially applicable circumstance here is "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). To obtain relief under Rule 60(b)(6), a party must show that "exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress." *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005) (citation omitted). Williams makes no showing of exceptional circumstances that have denied him a full and fair opportunity to litigate his claims. *See* Docket 28; *Harley*, 413 F.3d at 871 (citation omitted).

"Motions under Rule 59(e) 'serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence' and 'cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment.' " *Ryan v. Ryan*, 889 F.3d 499, 507 (8th Cir. 2018) (quoting *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006)). Williams has not shown a manifest error in law or fact, and he tenders no legal theories and raises no arguments that could not have been offered or raised prior to entry of judgment. *See* Docket 28. Further, a motion under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Williams's motion, considered under Rule 59(e), is untimely. *See* Docket 6. Thus, Williams's motion for reconsideration (Docket 28) is denied.

### III.    Defendants' Motion for Summary Judgment

#### A.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (internal quotation omitted). The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48 (emphases omitted).

Essentially, the availability of summary judgment turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved . . . in favor of either party." *Id.* at 250. While pro se prisoners are entitled to the benefit of liberal construction at the pleading stage, pro se prisoners are subject to the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987) (per curiam). The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996).

**B.    Fourteenth Amendment Claim**

Williams brings a claim against Westrum in his individual capacity for violation of his Fourteenth Amendment right to equal protection of the laws. Docket 1 at 1, 4-5. Defendants argue that Westrum is entitled to qualified immunity because he did not violate Williams's rights when he stopped Williams because the stop was not racially motivated. Docket 22 at 12-13.

The doctrine of qualified immunity "shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009)). To determine whether a government official is entitled to qualified immunity, the

9

court considers (1) whether the facts alleged, viewed in the light most favorable to plaintiff, demonstrate the official's conduct violated a constitutional right, and (2) whether the constitutional right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may consider the elements in any order, and if either of the elements is not met, then the official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"[T]he Constitution prohibits selective enforcement of the law based on considerations such as race[.]" *Whren v. United States*, 517 U.S. 806, 813 (1996) (noting that a selective enforcement of the law claim arises under the Equal Protection Clause of the Fourteenth Amendment). To prevail on a selective enforcement of the law claim, a plaintiff must show that the officer exercised discretion to enforce the law on account of race, "which requires proof of both discriminatory effect and discriminatory purpose." *Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir. 2003). In this case, Williams has not offered proof of either a discriminatory purpose or discriminatory effect.

"Proving discriminatory purpose is no simple task." *Gilani v. Matthews*, 843 F.3d 342, 349 (8th Cir. 2016) (quoting *Villanueva v. City of Scottsbluff*, 779 F.3d 507, 511 (8th Cir. 2015)). Williams must offer evidence that Westrum pulled him over because of his race. *See id.* Defendants contend that under *Clark v. Clark*, 926 F.3d 972, 980 (8th Cir. 2019), Williams must prove that he was stopped "solely on the basis of race[.]" Docket 22 at 12. In *Clark*, the Eighth Circuit stated, "To prove an equal protection claim in the context of a

police interaction, [a plaintiff] must prove that the officer exercised his discretion to enforce a law solely on the basis of race." 926 F.3d at 980 (citing *Crooks,* 326 F.3d at 999-1000). But in *United States v. Bell,* 86 F.3d 820, 823 (8th Cir. 1996), the Eighth Circuit stated, "To show discriminatory purpose, the claimant must show the official's decision to enforce the law was at least partially based on race." Recently, the Eighth Circuit acknowledged uncertainty regarding the correct standard for an equal protection violation arising out of a law enforcement decision. *Saunders v. Thies,* 38 F.4th 701, 714-15 (8th Cir. 2022). But the Eighth Circuit did not "conclusively resolve" the issue because the plaintiff "failed to show that the officers were motivated in any part by [his] race[.]" *Id.* at 715.

Here, Williams has failed to show that Westrum's decision to pull him over was motivated in any part by Williams's race. Westrum was instructed to pull Williams over because Williams was suspected of engaging in drug activity. Docket 21 ¶¶ 30-32. He then observed Williams commit a traffic violation, and he pulled Williams over for that traffic violation. *Id.* ¶¶ 34, 38. Williams has put forth no evidence that Westrum was motivated by race, and he does not dispute that he did commit a traffic violation. *See id.* ¶ 35. Thus, Williams has failed to show discriminatory purpose.

Further, Williams cannot show discriminatory effect. "To establish discriminatory effect, [the plaintiff] must show people of another ethnicity violated the law and the law was not enforced against them." *Gilani,* 843 F.3d at 348 (citing *Bell,* 86 F.3d at 823). Williams and the driver of the Ford F-150

11

must be similarly situated "in all relevant respects" to demonstrate selective

enforcement of the law. *See Saunders*, 38 F.4th at 714 (quoting *Gilani*, 843

F.3d at 348). Defendants argue that the driver of the Ford F-150 was not

similarly situated to Williams because "[t]he Ford F-150 was entirely unrelated

to the [drug activity] surveillance[.]" Docket 22 at 13 (citing *Flowers v. City of*

*Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009)).

In *Flowers*, the plaintiff sued his neighbor, a police officer, after the

officer directed coworkers to investigate and harass the plaintiff because he

believed the plaintiff was responsible for or connected to gang-related graffiti in

the neighborhood. 558 F.3d at 796-97. The plaintiff argued that he lived at "the

only home on the block with black residents, and that he and his family were

the only persons investigated when graffiti appeared in the area." *Id.* at 798.

The plaintiff was new to the neighborhood when the graffiti appeared, and a

gang investigator had told the officer that the plaintiff was "the uncle of a

member of a gang to which the graffiti related." *Id.* The Eighth Circuit found

that these factors "plainly distinguish[ed] [the plaintiff] from others in the

neighborhood who were longstanding residents and not identified by the gang

unit." *Id.* Thus, the plaintiff "was not similarly situated in all relevant respects

to the other inhabitants of his neighborhood block." *Id.*

Here, Williams cannot show that he was similarly situated to the driver of

the Ford F-150. Although he and the driver of the Ford F-150 both committed

the same traffic infraction, Williams was suspected of drug activity and the

driver of the Ford F-150 was not. Docket 21 ¶¶ 34-37. Thus, as in *Flowers*,

suspicion of criminal activity "plainly distinguish[es]" Williams from the driver

of the Ford F-150. *See* 558 F.3d at 798. Williams has failed to show

discriminatory effect. Defendants' motion for summary judgment is granted on

this claim.

### C.     Fourth Amendment Claim

Williams brings a claim against Westrum and Dalton in their individual

capacities for violation of his Fourth Amendment right to be free from

unreasonable searches. Docket 1 at 1, 4-5. Defendants argue that Westrum

and Dalton are entitled to qualified immunity because they did not violate

Williams's rights when they searched his vehicle without a warrant under the

automobile exception. Docket 22 at 15-18.

"Although a warrantless search usually constitutes a *per se* Fourth

Amendment violation, the automobile exception to the Fourth Amendment's

warrant requirement permits the warrantless search or seizure of a vehicle by

officers possessing probable cause to do so." *Cronin v. Peterson*, 982 F.3d 1187,

1197 (8th Cir. 2020) (citing *Chambers v. Maroney*, 399 U.S. 42, 51-52 (1970)).

"Probable cause exists when, given the totality of the circumstances, a

reasonable person could believe there is a fair probability that contraband or

evidence of a crime would be found in a particular place." *United States v.*

*Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (quoting *United States v.*

*Wells*, 347 F.3d 280, 287 (8th Cir. 2003)).

In the court filings attached to his complaint, Williams claimed that his

car was searched without his consent. *See* Docket 1-1 at 6. He also claimed

13

that Westrum and Dalton lacked probable cause to search his car. *See id.* at 6, 9. Defendants respond that probable cause existed because of the collective knowledge of law enforcement. Docket 22 at 15-18.

"When multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication." *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011). The Eighth Circuit has applied this collective knowledge doctrine to nonconsensual automobile searches. *See United States v. Aguilera*, 625 F.3d 482, 486 (8th Cir. 2010) (citing *United States v. Gillette*, 245 F.3d 1032, 1034 (8th Cir. 2001)). "[T]he validity of a search 'may be based on the collective knowledge of all of the law enforcement officers involved in an investigation if . . . some degree of communication exists between them[.]' " *Gillette*, 245 F.3d at 1034 (alteration in original) (quoting *United States v. Gonzalez*, 220 F.3d 922, 925 (8th Cir. 2000)).

Here, when Westrum followed and pulled over Williams, he was in communication with other law enforcement officers who were engaged in drug activity surveillance at 409 South Willow, and Dalton was in communication with Westrum when they arrested Williams and searched Williams's vehicle. Docket 21 ¶¶ 30-35, 38-44, 79-85. Thus, the collective knowledge of all law enforcement officers involved in the drug activity surveillance at 409 South Willow can be imputed to Westrum and Dalton when they decided that

14

probable cause existed to search Williams's vehicle. *See Gillette*, 245 F.3d at 1034 (citing *Gonzalez*, 220 F.3d at 925).

Defendants argue that Westrum and Dalton relied on the following facts when they believed they had probable cause to search Williams's vehicle under the automobile exception: the previous drug activity surveillance of South Willow Avenue, numerous individuals entering and leaving 409 South Willow on April 2, 2019, the presence of Moore at 409 South Willow with a black backpack, Williams entered 409 South Willow with Moore, the black backpack being placed in Williams's vehicle and subsequently removed, Williams's passenger fumbled with something in his lap, Williams returned to 409 South Willow and left again, law enforcement requested that Westrum find probable cause to stop Williams, Williams was seen making movements under the driver's seat while Westrum was following him, Williams failed to immediately pull over, Williams claimed that he was returning from the grocery store and that he had no criminal history, and the existence of an outstanding warrant for Williams's arrest for violation of his 24/7 sobriety program for possession of a controlled substance. Docket 22 at 19-20. They also relied on the discovery of a pipe they believed was used for illegal drugs to establish further probable cause to search the rest of the vehicle. *Id.* at 18. Given the totality of the circumstances, a reasonable person could believe that evidence of a crime would be found in Williams's vehicle. *See id.* at 18-20; *Murillo-Salgado*, 854 F.3d at 418 (citing *Wells*, 347 F.3d at 287).

15

Williams, through his attached court filings, argues that the justification for the search provided at the time of his arrest was to "ensure a weapon was not stashed." Docket 1-1 at 9. Defendants argue that Westrum "characterized the search as a weapons search, as opposed to a drug search, so as not to burn the ongoing investigation." Docket 22 at 18 n.7 (citing Docket 24 ¶ 16). The United States Supreme Court has explained that "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Whren*, 517 U.S. at 813 (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)). In other words, this court must consider whether the information known to and imputed to Westrum and Dalton objectively justified the search, rather than whether Westrum's description of his justification for the search at the time was sufficient. *See id.* (citing *Scott*, 436 U.S. at 138). As described above, these circumstances provided probable cause to search Williams's vehicle. *See* Docket 22 at 18-20; *Murillo-Salgado*, 854 F.3d at 418 (citing *Wells*, 347 F.3d at 287).

Defendants further argue that even if Williams's Fourth Amendment right to be free from unreasonable search was violated, he cannot establish that the right in question was clearly established. Docket 22 at 19-21. "A right is clearly established if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Carroll*, 658 F.3d at 827 (quoting *Brown*, 574 F.3d at 499). To show that a right was clearly

16

established, the plaintiff must provide either "controlling authority . . . which clearly established the rule on which [he or she] seek[s] to rely" or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999). The Supreme Court has noted, however, that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful[.]" *United States v. Lanier*, 520 U.S. 259, 271 (1997) (first alteration in original) (internal quotation omitted). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, Williams cannot show that the right in question was clearly established. Even if the facts known to and imputed to Westrum and Dalton were objectively insufficient to provide probable cause to search Williams's vehicle, Westrum and Dalton were not unreasonable to believe that probable cause existed. *See Carroll*, 658 F.3d at 827 (citing *Brown*, 574 F.3d at 499). Williams provides no controlling authority or consensus of cases of persuasive authority that show Westrum and Dalton's actions to be unlawful. *See Wilson*, 526 U.S. at 617. This court does not find that a general constitutional rule applies here with obvious clarity as described in *Lanier*. *See* 520 U.S at 271. Thus, the right in question was not clearly established, and Westrum and Dalton are entitled to summary judgment on this claim.

17

Thus, it is ORDERED:

1.   That Williams's motion for reconsideration (Docket 28) is denied.

2.   That defendants' motion for summary judgment (Docket 20) is granted. Defendants are entitled to summary judgment in their favor on all claims.

3.   That Williams's motion for judgment (Docket 27) is denied as moot.

4.   That Williams's motion for appointment of counsel (Docket 31) is denied as moot.

Dated March 6, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE